JoNes, Judge,
delivered the opinion of the court:
This is an action by plaintiff for damages and waste alleged to have been committed by the defendant upon plaintiff’s lands near San Diego, California, during their use as an army cantonment.
A previous suit was instituted and recovery was had by plaintiff on certain phases of the claim.[5] Because of the decision of the court in that case that it had no jurisdiction over certain parts of the claim for damages and waste, the Congress in April 1939 passed a special act (53 Stat. 1452) conferring-jurisdiction upon the Court of Claims in reference to these matters. There" is a difference between plaintiff and defendant as to the extent of the jurisdiction conferred by the special act. The plaintiff contends that the jurisdiction *487 is limited to plaintiff’s claim for damages, and waste which was not adjudicated in the previous decision and to a trial de novo on the question of the value of use and occupancy of the property as permitted by the second proviso; and that consequently any counterclaim on the part of the defendant is limited to the recovery of any excess that may have been paid by the Government for the use of the property during the period in question. The defendant asserts that the terms of the special act confer complete jurisdiction for a redeter-mination of all phases of the claim.
The special act which is set out in full in the preliminary part of the findings provides:
* * * That jurisdiction * * * is hereby^ conferred upon the Court of Claims of the United States, notwithstanding the lapse of time, prior determination, the invalidity of the lease, or any statute of limitation, to hear and determine the claim of the Mack Copper Company against the United States for the damages and waste inflicted to certain real property owned by the Mack Copper Company * * * which real property was taken, used, and occupied by the United States •s * * (luring the period from on or about May 15, 1917, to on or about June 1,1922, not heretofore paid by the United States to the Mack Copper Company: * * * [Italics supplied.]
Provided further, That in the event that any suit is brought on said claim pursuant to the provisions of this Act, the court shall reopen and reconsider de novo the claim heretofore adjudicated for use and occupation of said property, if the United States so requests.
The issue arises primarily over whether the proviso has the limited meaning contended for by the plaintiff or whether it confers the broad jurisdiction to reopen all phases of the claim heretofore adjudicated.
The special bill as first introduced did not contain the quoted proviso. The House Committee Report accompanying the bill contained the following language:
After the land was returned to the Mack Copper Co., the latter brought suit in the Court of Claims to recover the value of the use and occupation and damages for waste. The court made an award for the reasonable value of the use and occupation, and_ a further award for the value of certain topsoil that had been removed *488 and sold by the Government. The amount so awarded for the topsoil was the exact amount which the Government received when it sold the same. This item of the award was made on the theory that the Government appropriated the topsoil. The Court of Claims refused to consider the claim for waste upon the ground that,-as the Government was not a lessee, no covenant against waste could be implied (Mack Copper Company v. United States, 63 C. Cls. 562). The Attorney General points out that it should be borne in mind in this connection that the Court of Claims has no general jurisdiction over tort claims.
A prior bill (S. 1876,74th Cong.), conferring jurisdiction on the Court of Claims in this matter, was pocket-vetoed in September 1935 because, as stated by the Attorney General:
“It was too broad in its terms and would have permitted a reopening of the entire case, instead of only the item which was dismissed by the Court of Claims without a decision on the merits.”
House bill 2595, as amended, follows the language recommended by the Attorney General and no longer contains features objectionable to either the War Department or the Attorney General. The committee amendment was prepared by the Attorney General and adopted by your committee at the suggestion of both the Attorney General and the Secretary of War.
Reports by the Attorney General and the Secretary of War, to the chairman, Committee on War Claims, in which no objection is interposed to the enactment of this bill, as amended, are appended hereto and made a part of this report.
The report of the Attorney General to the Committee was made a part of the Committee Report, and contains the following language:
The court awarded the sum of $79,500 as the reasonable value of the use and occupation, and a further sum of $150,000 as the value of certain topsoil that had been removed and sold for that sum by the Government, the latter award being made on the theory of a taking. The Court of Claims refused to consider the claim for waste upon the ground that, as the Government was not a lessee, no covenant against waste could be implied (Mack Copper Co. v. United States, 63 C. Cls. 562, decided June 6, 1927). It should be borne in mind in this connection that the Court of Claims has no general jurisdiction over tort *489 claims. The purpose of the bill under consideration appears to be to permit an adjudication on the merits of this item of the claim.
A prior bill (S. 1876, 74th Cong.), conferring jurisdiction on the Court of Claims in this matter, was pocket-vetoed m September ■1935 because it was too broad in its terms and would have permitted a reopening of the entire ease, instead of only the item which was dismissed by the Court -of Claims without a decision on the merits. [Italics supplied.]
The report of the Secretary of War to the House Committee on War Claims was also made a part of the Committee Report accompanying the special-bill, and reads in part as follows:
However, in February 1933 there was discovered in the files of the War Department an original document dated March 3,1920' (copy enclosed), which, if it had been made available to the' court, might have established the validity of the leases which the court declared to be invalid. As the leases in question recited a consideration of $1, while the court awarded damages of $79,500 on the implied contract, any reconsideration of the case should provide for a reopening of the question of the validity of the leases, and an opportunity for the court to consider the document of March 3, 1920.
‡ ^ ^
You are advised that the War Department has no objection to the proposed legislation, provided that it is amended so as to permit the cowrt to reconsider its opinion on the validity of the leases and, if it is found that they are valid and that the Mach Copper Co. has been overpaid for use and occupation of the land, that the amownt of such overpayment be applied to any award which may be made on claims for waste, with judgment for the United States in case of any excess. [Italics supplied.]
In its opinion in the previous case the court stated “We are of opinion that the Government never had, so far as the record shows, any valid lease of the plaintiff’s property for any period of time” and that it therefore “became liable to compensate the plaintiff for the value of said use a'nd occupation.” [Italics supplied.] It fixed the reasonable value of said use and occupation at $79,500. The court also found that the defendant had removed topsoil from the property which it sold to third parties and for which *490 it received the sum of $150,000. It held that plaintiff was entitled to recover this amount on account of such removal and sale. The court then held that there were certain other things connected with the use and occupation of the property in the nature of waste for which the defendant was not liable as it did not hold the property under a lease, and that therefore there could arise no implied covenant under which relief could be given within the limited jurisdiction of the Court of Claims.
In the previous case the attorneys for the defendant presented very little testimony. In that case the plaintiff’s testimony covered 1,260 pages, the defendant’s only 30 pages. In the case at bar a great deal of new testimony was presented. The attorneys for the defense made a very thorough investigation and presented the facts respecting all phases of the case much more fully and completely. It appears from the testimony in this case that a much greater amount was allowed in the previous decision for the removal of topsoil than the facts as they now appear before the court would have justified. We have no doubt that had the facts been fully presented to the court in the previous hearing as they now appear in the record the amount of recovery allowed on this item would have been a great deal less than the amount that the plaintiff in that case was permitted to recover.
However, in the light of the terms of the special jurisdictional act under which this suit is brought, especially when read in connection with the accompanying Committee Report from which we have quoted, it is doubtful whether it was the intention of the Congress that .this phase of the case should be readjudicated. But there is no doubt that it was the intention of the Congress that the court should determine the amount of damages and waste that was committed during the period of use and occupancy by the defendant, and that it should also consider anew the question of the validity of the lease and consequently the amount that should have been paid therefor by the defendant.
The facts in detail are set out in the findings, are approved, and will not be repeated here.
This is a strange and unusual case. The land was located *491 9 miles north, of the city of San Diego, about 15 miles by rail from the business district and about 11 or 12 miles from the industrial center. It had very little value intrinsically except for grazing purposes, for which it was worth about 50 cents an acre per year. The annual taxes were about $3,000. Its chief value was because of its location and due to its distance from the city this was somewhat speculative.
It was undoubtedly its speculative as well as its prospective value that plaintiff had in mind when the contract of purchase was negotiated. At one time during the use and occupancy by the defendant the plaintiff entered into a contract with a company for the development and sale of a portion of the land as a subdivision. Only a few lots, however, were sold.
We have gone through the conflicting testimony of this rather fantastic record. Much of it is confusing, but certain facts stand out clearly in the light" of the testimony taken in both hearings.
There are undoubtedly certain items of damage and waste to which plaintiff is entitled and which were not considered by the court in the previous action.
. After fully considering the testimony in both cases we have no doubt there was a valid lease. True, it was not formally authorized by the Board of Directors, but this was largely a family corporation and the Board of Directors rarely met. The lease was signed under seal by the president of the corporation, was regular in form, and as such it had been accepted. Not only was no proper notice of repudiation ever given to the defendant, but the plaintiff by conduct, letters, instruments, and the document of March 3, 1920, affirmatively ratified it and the lease was therefore valid. [Finding No. 18.]
It is true that one of the stockholders testified that he orally advised some of the army officers at the camp that the execution of the lease was not authorized, but he admitted that this was several months after it had been accepted, and construction of the cantonment was well under way. There was nothing in writing to support this testimony. On the contrary, the plaintiff wrote letters referring to the Govern- *492 meat lease on its property, admitted it in its pleading in a suit filed in the United States District Court for the Southern District of California, and acknowledged it in the document of March 3, 1920. Shining through the record are many facts and circumstances that indicate that no one would have been more disappointed than plaintiff had the defendant moved off the property in the early part of its occupancy.
According to the terms of the lease the plaintiff should have been allowed only nominal pay for use and occupancy instead of the $79,500 which was actually allowed in the pre-. vious determination.
There is no doubt that certain improvements made by the defendant and those necessarily made by others because of the location of the defendant’s activities on the property added to its speculative value. There seems little doubt that the plaintiff having this value in mind was anxious that the activities of the defendant continue and that it hoped to finally sell the property to the Government, or if not, to sell unused parts of it for an added sum because of the activities of the Government. In view of the nature of the value of this property and the circumstances disclosed in the findings and made especially clear by the evidence in the case,, the plaintiff had every reason to acquiesce in and to ratify the lease contract.
The plaintiff is entitled to recover the amount of the first 5 items set out in Finding 63, a total of $45,300. It is not entitled to the item of topsoil because this was included in the previous determination and payment. It is not entitled to the lease item for use and occupancy in view of the terms of the lease.
The defendant is entitled to recover by way of counterclaim the sum of $79,499. ■
After deducting the amount which plaintiff is entitled to recover from the sum which is due the Government, there is a net balance due the Government of $34,199.
While the plaintiff is due the amount indicated, it should go as a credit on the larger amount due the Government. The plaintiff, therefore, takes nothing and the defendant is entitled to recover on its counterclaim against the plaintiff the *493 net sum of $34,199, together with interest thereon as provided by law from the date of payment of judgment in the previous case.
It is so ordered.
•Madden, Judge; Whitaker, Judge; Littleton, Judge; and Whaley, OMef Justice, concur.

 Mach Copper Company v. The United States, 63 C. Cls. 562.